EXHIBIT 1

# Baker Hughes Oilfield Operations, Inc.

**Order Acknowledgement**

Date 03-Dec-2016 | Page 1 of 3 | Number: 8292495

| Sold-to Address | Ship-to Address | General Information | |
|---|---|---|---|
| AHTNA ENVIRONMENTAL INC<br>110 W 38TH AVENUE, SUITE 200B<br>ANCHORAGE AK 99503-5677<br>USA | AHTNA 1<br>VALDEZ<br>VALDEZ AK 99686<br>USA | Order Total:<br>Customer Number:<br>Purchase Order Number:<br>Mode of Transport:<br>Terms of Delivery:<br>Terms of Payment:<br>Requested Del Date:<br>Product Line: | 89,722.25 USD<br>40167685<br>5909245<br>Truckload<br>EXW OUR PLANT<br>30 Days Net<br>04-Dec-2016<br>70 |

| Well Data | | Contact Information |
|---|---|---|
| Well Name: AHTNA<br>Well Number: 1<br>Rig/Platform: SAXON 169<br>State/Country: Alaska / USA<br>County/Parish: VALDEZ | BHI Well Ref. No.: 61175875 | Baker Hughes Oilfield Operations, Inc.<br>51950 Dolores DR<br>NIKISKI AK 99635<br>USA<br>Tel: 907-776-8131 |

Code# 5909245

| Item | Material/Description | Quantity | Unit Price | Extended Price (USD) |
|---|---|---|---|---|
| 001000 | H296420046    OBS S/S H296420070 ECN E128-15<br>ZXPN LINER PACKER W/HRD-E PROFILE 5.000 IN 18.00 LB/FT VAM TOP HT BOX DOWN 07.000 IN 26.0-29.0 LB/FT CSG 5.750 IN EXT OD 5.250 IN EXT ID 10.00 FT EXT LG 22RC, 80 KSI MYS (API 5CT) EXT 5.969 IN OD 4.195 IN ID (MUST DRIFT 4.151) 4.250 IN PKOFF DIA 25,000 LBS SETTING FORCE 4.862 OD COLLET (H078298500) 80 KSI MYS (API-5CT)<br>Sale Price | 1 EA | 9,899.00 | 9,899.00 |
| 002000 | HNB131214N    LH, NON-BAKER XOVR<br>NON-BAKER CROSSOVER<br>Sale Price | 1 EA | 3,000.00 | 3,000.00 |
| 003000 | H294101433    LH FLX IV HYD ASSY, NON-ROT 5"18#VTHT 07<br>LINER HANGER FLEX-LOCK IV HYDRAULIC ASSEMBLY NON-ROT 5.000 IN 18.00 LB/FT VAM TOP HT PIN UP 5.000 IN 18.00 LB/FT VAM TOP HT PIN DOWN 07.000 IN 26.0-32.0 LB/FT CSG 5.924 IN OD 4.176 IN ID 1,251-1,690 PSI SHEAR 15% SHEAR SCREWS 10.00 FT LG KIT MOUNTED ON TOP 22RC, 80 KSI MYS (API 5CT) BDY 22RC, 80 KSI MYS (API 5CT) KIT<br>Sale Price | 1 EA | 9,122.00 | 9,122.00 |
| 005000 | H024747203    SBE BMS-A089<br>80-40 SEAL BORE EXTENSION 20.00 FT LG 41XX OR LB0 STEEL 80 MYS NACE<br>Sale Price | 1 EA | 6,000.00 | 6,000.00 |
| 007000 | H274101088    LC, TYP 1 4.5" 12.6# BUTTTBG 22RC, 80 KS<br>LANDING COLLAR TYPE I 4.500 IN 12.60 LB/FT BUTT (TUBING) BOX UP 4.500 IN 12.60 LB/FT PIN DOWN 5.220 IN OD 22RC, 80 KSI MYS<br>Sale Price | 1 EA | 2,188.00 | 2,188.00 |


| Item | Material/Description | Quantity | Unit Price | Extended Price (USD) |
|---|---|---|---|---|
| 008000 | H269210048    LWP, TYP I 04.5"12.6-15.1#CSG NIT SL<br>LINER WIPER PLUG TYPE I 04.500 IN 12.6-15.1 LB/FT CSG 4.220 IN OD 1.641 IN ID 1.844 IN PDP NOSE OD NITRILE SEAL<br>Sale Price | 1 EA | 1,617.00 | 1,617.00 |
| 009000 | H270200056    PDP, 1.8"PDP NS OD NIT SL 5.1"OD W/PHENO<br>PUMP DOWN PLUG 5.130 IN OD 1.844 IN PDP NOSE OD F/4.892 IN MAX CSG ID F/2.000 IN MIN CSG ID 3 FINS NITRILE SEAL W/PHENOLIC INSERT W/SLIP<br>Sale Price | 1 EA | 626.00 | 626.00 |
| 010000 | H453010065    LTSA, 80-40<br>GBH-22 LOCATOR TUBING SEAL ASSEMBLY 80-40 4.020 IN SEAL OD 2.975 IN ID 41XX OR L80 STEEL 80 MYS NACE 3.500 IN 9.20 LB/FT EU 8RD MOD BOX UP 1/2 MULESHOE 152.746 IN LG<br>Sale Price | 1 EA | 8,543.00 | 8,543.00 |
| 011013 | 10001345    ZW3 Field Specialist-Liner Hanger<br>Liner Hanger Service Technician<br>C.Guenther 11/22 - 12/4<br>Service - Tool Supervisor - Liner Hangeror ECP | 13 EA | 2,200.00 | 28,600.00 |
| 011143 | H265340033    ZB3 OBS S/S H265340033RT ECN N467 11<br>SETTING TOOL HYDRAULIC LINER TOP PACKER 3.500 IN NC38 BOX UP 3.500 IN NC38 PIN DOWN F/5.000 IN LINER OD 5.673 IN OD 2.000 IN ID 5.250 IN EXT ID 1,281-1,733 PSI SHEAR 110 KSI MYS<br>Rental - Per Run<br>Customer Discount<br>Net Value for Item | 1 EA | 9,210.00<br>35.00-% | 9,210.00<br>3,223.50-<br>5,986.50 |
| 011144 | H265340033    OBS S/S H265340033RT ECN N467 11<br>SETTING TOOL HYDRAULIC LINER TOP PACKER 3.500 IN NC38 BOX UP 3.500 IN NC38 PIN DOWN F/5.000 IN LINER OD 5.673 IN OD 2.000 IN ID 5.250 IN EXT ID 1,281-1,733 PSI SHEAR 110 KSI MYS<br>Serial Numbers:    10580671 | 1.000 EA | | |
| 012144 | 10005142    Rental Tools for Hyd Liner Hngr 4 1/2- 5<br>Rental Tools for Hyd Liner Hngr 4 1/2- 5<br>Rental - First 5 Days<br>Customer Discount<br>Net Value for Item | 1 EA | 15,995.00<br>35.00-% | 15,995.00<br>5,598.25-<br>10,396.75 |
| 013144 | 10009204    5" BTCM Coupling<br>Sale of 5" BTCM Coupling<br>Sale - Package | 1 EA | 500.00 | 500.00 |
| 014144 | 10009204    Cross-Over 5" 18# BTC x 4.5"12.6# DWC Pi<br>Sale of 5.00" 18# BTC Box x 4.500" 12.6# Crossover built by BHI Machine Shop | | | |



| Item | Material/Description | Quantity | Unit Price | Extended Price (USD) |
|---|---|---|---|---|
|  | Sale - Package | 1 EA | 3,244.00 | 3,244.00 |

|  |  |
|---|---|
| Total Sales | 44,739.00 |
| Total Services | 28,600.00 |
| Total Rental | 25,205.00 |
| Total Charges | 98,544.00 |
| Total Adjustments | 8,821.75- |
| Sub Total | 89,722.25 |
| Final Amount (USD) | 89,722.25 |

*NOTICE: THE TERMS AND CONDITIONS ATTACHED HEREWITH CONTAIN RELEASE, INDEMNITY AND ARBITRATION PROVISIONS.*

To the extent this order is not subject to a written contractual agreement the goods and services to be supplied under this order will be made strictly in accordance with the terms attached with this form. The purchaser is required to be aware of those terms, particularly any release, indemnity or arbitration provisions.

BHI Representative _Karl McCormick_ Date: 12-05-16　　　Customer Representative _Evan K Harness_ Date: 12-12-16



# Baker Hughes Oilfield Operations, Inc.

**Order Acknowledgement**

Date: 10-Jan-2017 | Page 1 of 7 | Number: 8356306

**Sold-to Address**
AHTNA ENVIRONMENTAL INC
110 W 38TH AVENUE, SUITE 200B
ANCHORAGE AK 99503-5877
USA

**Ship-to Address**
AHTNA 1
VALDEZ
VALDEZ AK 99686
USA

**General Information**
| | |
|---|---|
| Order Total: | 6,012.50 USD |
| Customer Number: | 40167665 |
| Purchase Order Number: | 05IC3 |
| Mode of Transport: | Truckload |
| Terms of Delivery: | EXW OUR PLANT |
| Terms of Payment: | 30 Days Net |
| Requested Del Date: | 11 Jan 2017 |
| Product Line: | 70 |

**Well Data**
Well Name: AHTNA
Well Number: 1
Rig/Platform: SAXON 169
State/Country: Alaska / USA
County/Parish: VALDEZ

BHI Well Ref. No.: 81175875

**Contact Information**
Baker Hughes Oilfield Operations, Inc.
51950 Dolores DR
NIKISKI AK 99635
USA
Tel: 907-776-8131

AFE# 05IC3    PROJECT CODE   05ZC3 005 002 0010

| Item | Material/Description | Quantity | Unit Price | Extended Price (USD) |
|---|---|---|---|---|
| 001100 | 10286344    ZL1 Machinst-Fishing<br>Labor to :<br>Recut Qty 2- 4 1/2 IF Pins 2 Hrs Each<br>Recut Qty 2- 4 1/2 IF Boxes 2 Hrs Each<br>Refaced Qty 2 - CDS40 Connections 1 Hr Each<br>Refaced Qty 3- 4"FH Connections 1 Hr Each<br>Recut Qty 1- 6 5/8 Reg Pin W/ Stress Relief 2.5Hrs.<br>Labor - Hourly (Regular rate) | 21.5 EA | 175.00 | 3,762.50 |
| 001101 | 10286344    ZL2 Machinst-Fishing<br>License/Gauge Fee for CDS40 Qty 6<br>Labor - Hourly (Overtime rate) | 6 EA | 375.00 | 2,250.00 |

| | | |
|---|---|---|
| | Total Services | 6,012.50 |
| | Final Amount (USD) | 6,012.50 |

"NOTICE: THE TERMS AND CONDITIONS ATTACHED HEREWITH CONTAIN RELEASE, INDEMNITY AND ARBITRATION PROVISIONS."

To the extent this order is not subject to a written contractual agreement the goods and services to be supplied under this order will be made strictly in accordance with the terms attached with this form. The purchaser is required to be aware of those terms, particularly any release, indemnity or arbitration provisions.

BHI Representative _____ Date: 1/10/17    Customer Representative _____ Date: 1/11/17
R M LEMON

**NOTE: THIS AGREEMENT CONTAINS PROVISIONS THAT INDEMNIFY AND/OR RELEASE THE INDEMNIFIED AND/OR RELEASED PARTY FROM THE CONSEQUENCES OF ITS OWN NEGLIGENCE AND OTHER LEGAL FAULT.**



# TERMS AND CONDITIONS

### Worldwide

Orders for rental equipment ("Equipment"), services ("Services"), and the supply or sale of products, chemicals, or equipment ("Products") to be provided by Baker Hughes Incorporated through its direct or indirect subsidiaries (in each case such subsidiary is referred to herein as "BHI" and shall be severally liable for all obligations of BHI herein arising from or related to the order) to its customers (each a "Customer") are subject to acceptance by BHI, and any orders so accepted will be governed by the terms and conditions stated herein and any additional terms proposed or agreed to in writing by an authorized representative of BHI (these terms and conditions and any such additional terms collectively referred to herein as the "Agreement").

### 1. PAYMENT TERMS

Unless alternate payment terms are specified or approved by the BHI Credit Department, all charges billed by BHI must be paid within thirty (30) days of the date of invoice. For invoices unpaid after thirty (30) days, at BHI's option, discounts from list price may be revoked, interest may be charged at the rate of ten percent (10%) per annum (unless such rate contravenes local law in which case the interest will accrue at the maximum rate allowed by law) and Customer shall pay BHI all costs of collection, including reasonable attorneys' fees and court costs, in addition to other amounts due. Operating, production or well conditions that prevent satisfactory operation of Equipment, Services or Products do not relieve Customer of its payment responsibility.

### 2. CANCELLATION AND RETURNS

**Products:** Orders for Products that are subject to cancellation after acceptance by BHI, but before delivery, will be subject to a restocking charge of at least twenty-five percent (25%), plus any packing and transportation costs incurred before delivery. Products specially built or manufactured to Customer specifications, or orders for substantial quantities manufactured specially for Customer, may not be cancelled.

Products may be returned for credit only with prior written authorization from BHI. Such Products must be unused, in reusable condition, and with original unopened containers. Credit will be issued for the quantity returned at the original purchase price, less a restocking charge of at least twenty-five percent (25%) and any actual packing and transportation costs incurred by BHI. No credit will be given for shipping charges incurred by Customer.

**Equipment/Services:** In the event Customer cancels an order for Services, Customer shall be liable for all costs incurred by BHI in the mobilization/demobilization related thereto, and any other reasonable costs incurred by BHI incident to such cancellation. In the event Customer cancels an order for Equipment, Customer shall be liable for any transportation costs incurred by BHI in the mobilization/demobilization of the Equipment. In addition, a restocking charge of at least twenty-five percent (25%) of the original Equipment order may be applied at BHI's sole discretion.

### 3. THIRD-PARTY CHARGES, TAXES

Customer shall pay all third-party charges, in compliance with BHI's current price list, and any sales, use, rental or other taxes that may be applicable to transactions hereunder. Customer shall pay all applicable customs, excise, import and other duties unless otherwise agreed to in writing by an authorized representative of BHI. Customer shall provide necessary import licenses and extensions thereof.

### 4. RISK OF LOSS AND TITLE, CONSIGNMENT, STORAGE

Unless otherwise agreed to in writing between BHI and Customer: (i) for Product sales within the United States of America, title and risk of loss shall pass to Customer as soon as the Products depart BHI's point of origin; and (ii) for Product sales outside the United States of America, INCOTERM 2010 "CPT" shall apply with the following exception: TITLE AND RISK OF LOSS REMAIN WITH BHI UNTIL THE PRODUCTS REACH THE PORT OF ENTRY. For Products provided on consignment, the risk of loss shall pass to Customer as soon as the Products depart BHI's point of origin; however, the title shall remain with BHI until the Product is used by Customer.

In the event BHI agrees to store Products after title passes to Customer, the risk of loss shall remain with Customer. If any such Products remain on BHI's premises for more than two (2) years from the date initially placed in storage, title shall revert back to BHI, and BHI may resell or scrap any such Products with no liability to Customer for any proceeds generated therefrom.

### 5. LIABILITIES, RELEASES AND INDEMNIFICATION:

**A.** In this Agreement (i) "BHI Indemnitees" means BHI, its parent, subsidiary and affiliated or related companies; its subcontractors at any tier; and the officers, directors, employees, consultants, and agents of all of the foregoing; (ii) "Claims" means all claims, demands, causes of action, liabilities, damages, judgments, fines, penalties, awards, losses, costs, expenses (including without limitation, attorneys' fees and costs of litigation) of any kind or character arising out of, or related to, the performance of or subject matter of this Agreement; (iii) "Consequential Damages" means any indirect, special, punitive, exemplary or consequential damages or losses (whether foreseeable or not at the date of this Agreement) under applicable law and damages for lost production, lost revenue, lost product, lost profit, lost business, lost business opportunities, or charges for rig time, regardless of whether the same would be considered direct, indirect, special, punitive, exemplary or consequential damages or losses under applicable law; (iv) "Customer Indemnitees" means Customer, its parent, subsidiary and affiliated or related companies; its co-lessees, co-owners, partners, joint operators and joint venturers, its client or customer if it is not the end user of the Equipment, Services, or Products; its other contractors at any tier; and the officers, directors, employees, consultants, and agents of all of the foregoing; (v) "Cuttings and Waste" means any drill cuttings and associated muds, waste or materials from the well arising from or processed pursuant to this Agreement; and (vi) "Tools" means Equipment and any of BHI Indemnitees' instruments, equipment, or tools.

**B.** BHI SHALL RELEASE, INDEMNIFY, DEFEND AND HOLD CUSTOMER INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO (I) PERSONAL OR BODILY INJURY, ILLNESS, SICKNESS, DISEASE OR DEATH OF ANY MEMBER OF BHI INDEMNITEES, AND (II) LOSS, DAMAGE OR DESTRUCTION OF REAL OR PERSONAL PROPERTY, WHETHER OWNED, LEASED, OR CHARTERED, OF ANY MEMBER OF BHI INDEMNITEES.

**C.** CUSTOMER SHALL RELEASE, INDEMNIFY, DEFEND AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS ARISING OUT OF OR RELATED TO (I) PERSONAL OR BODILY INJURY, ILLNESS, SICKNESS, DISEASE OR DEATH OF ANY MEMBER OF CUSTOMER INDEMNITEES, AND (II) LOSS, DAMAGE OR DESTRUCTION OF REAL OR PERSONAL PROPERTY, WHETHER OWNED, LEASED, OR CHARTERED, OF ANY MEMBER OF CUSTOMER INDEMNITEES.

**D.** SHOULD TOOLS BECOME LOST OR DAMAGED IN THE WELL OR HOLE WHEN PERFORMING OR ATTEMPTING TO PERFORM THE SERVICES HEREUNDER, IT IS UNDERSTOOD THAT CUSTOMER SHALL MAKE EVERY EFFORT TO RECOVER THE LOST OR DAMAGED TOOLS AT ITS SOLE COST. CUSTOMER SHALL ASSUME THE ENTIRE RESPONSIBILITY FOR FISHING OPERATIONS IN THE RECOVERY OR ATTEMPTED RECOVERY OF ANY SUCH LOST OR DAMAGED TOOLS. NONE OF BHI'S EMPLOYEES ARE AUTHORIZED TO DO ANYTHING WHATSOEVER, NOR SHALL ANY OF BHI'S EMPLOYEES BE REQUIRED BY CUSTOMER TO DO ANYTHING, OTHER THAN CONSULT IN AN ADVISORY CAPACITY WITH CUSTOMER IN CONNECTION WITH SUCH FISHING OPERATIONS.

NOTWITHSTANDING PARAGRAPH D. ABOVE, SHOULD CUSTOMER FAIL TO RECOVER SUCH TOOLS LOST IN THE WELL, OR SHOULD SUCH TOOLS BECOME DAMAGED IN THE WELL, OR DAMAGED DURING RECOVERY, CUSTOMER SHALL REIMBURSE BHI FOR THE COST OF REPAIRING ANY TOOLS SO DAMAGED, OR THE REPLACEMENT VALUE OF ANY SUCH TOOLS THAT ARE LOST OR NOT REPAIRABLE.

FURTHER, NOTWITHSTANDING PARAGRAPH D. ABOVE, ALL RISKS ASSOCIATED WITH LOSS OF OR DAMAGE TO TOOLS WHILE IN THE CUSTODY OR CONTROL OF CUSTOMER OR DURING TRANSPORTATION ARRANGED BY OR CONTROLLED BY CUSTOMER, SHALL BE BORNE BY CUSTOMER.

**E.** NOTWITHSTANDING ANYTHING CONTAINED IN THIS AGREEMENT TO THE CONTRARY, CUSTOMER SHALL RELEASE, INDEMNIFY, DEFEND AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS ASSERTED BY OR IN FAVOR OF ANY PERSON, PARTY, OR ENTITY (INCLUDING BHI INDEMNITEES) ARISING OUT OF OR RELATED TO: (I) LOSS OF OR DAMAGE TO ANY WELL OR HOLE (INCLUDING BUT NOT LIMITED TO THE COSTS OF RE-DRILL AND SIDETRACK), (II) BLOWOUT, FIRE, EXPLOSION, CRATERING OR ANY UNCONTROLLED WELL CONDITION (INCLUDING BUT NOT LIMITED TO THE COSTS TO CONTROL A WILD WELL AND THE REMOVAL OF DEBRIS), (III) DAMAGE TO ANY RESERVOIR, GEOLOGICAL FORMATION OR UNDERGROUND STRATA OR THE LOSS OF OIL, WATER OR GAS THEREFROM, (IV) THE USE OF BHI INDEMNITEES' RADIOACTIVE TOOLS OR ANY CONTAMINATION RESULTING THEREFROM (INCLUDING BUT NOT LIMITED TO RETRIEVAL OR CONTAINMENT AND CLEAN-UP), (V) POLLUTION OR CONTAMINATION OF ANY KIND INCLUDING BUT NOT LIMITED TO THE COST OF CONTROL, REMOVAL, CLEAN-UP AND REMEDIATION, OR (VI) DAMAGE TO, OR ESCAPE OF ANY SUBSTANCE FROM, ANY PIPELINE, VESSEL, OR STORAGE OR PRODUCTION FACILITY.

**F.** CUSTOMER ACKNOWLEDGES THAT CUTTINGS AND WASTE REMAIN CUSTOMER'S RESPONSIBILITY. CUSTOMER SHALL RELEASE, INDEMNIFY, DEFEND AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, ASSERTED BY OR IN FAVOR OF ANY PERSON OR ENTITY ARISING OUT OF OR RELATED TO THE TRANSPORTATION, STORAGE, TREATMENT, DISPOSAL OR HANDLING OF CUTTINGS AND WASTE, INCLUDING, WITHOUT LIMITATION, CONTAMINATION OF, OR ADVERSE EFFECTS ON THE ENVIRONMENT OR ANY FORM OF PROPERTY, OR ANY VIOLATION OR ALLEGED VIOLATION OF STATUTES, ORDINANCES, LAWS, ORDERS, RULES AND REGULATIONS (INCLUDING, WITHOUT LIMITATION, ALL CLAIMS UNDER THE COMPREHENSIVE ENVIRONMENTAL RESPONSE, COMPENSATION, AND LIABILITY ACT ("CERCLA"), 42 U.S.C. §§ 9601 ET SEQ., OR OTHER APPLICABLE STATUTES OR REGULATIONS).

**G.** CUSTOMER SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ANY CLAIMS FOR CONSEQUENTIAL DAMAGES ASSERTED BY OR IN FAVOR OF ANY MEMBER OF CUSTOMER INDEMNITEES. BHI SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD CUSTOMER INDEMNITEES HARMLESS FROM AND AGAINST ANY CLAIMS FOR CONSEQUENTIAL DAMAGES ASSERTED BY OR IN FAVOR OF ANY MEMBER OF BHI INDEMNITEES.

**H.** In the event this agreement is subject to the indemnity or release limitations in Chapter 127 of the Texas Civil Practices and Remedies Code (or any successor statute), and so long as such limitations are in force, each party covenants and agrees to support the mutual indemnity and release obligations contained in Paragraphs B. and C. above by carrying equal amounts of insurance (or qualified self-insurance) in an amount not less than U.S. $5,000,000.00 for the benefit of the other party as indemnitee.

**I.** THE EXCLUSIONS OF LIABILITY, RELEASES AND INDEMNITIES SET FORTH IN PARAGRAPHS B. THROUGH G. OF THIS ARTICLE 5, AND ARTICLES 6 AND 10, SHALL APPLY TO ANY CLAIM(S) WITHOUT REGARD TO THE CAUSE(S) THEREOF INCLUDING BUT NOT LIMITED TO PRE-EXISTING CONDITIONS, WHETHER SUCH CONDITIONS BE PATENT OR LATENT, THE UNSEAWORTHINESS OF ANY VESSEL OR VESSELS, IMPERFECTION OF MATERIAL, DEFECT OR FAILURE OF PRODUCTS OR EQUIPMENT, BREACH OF REPRESENTATION OR WARRANTY (EXPRESS OR IMPLIED), ULTRAHAZARDOUS ACTIVITY, STRICT LIABILITY, TORT, BREACH OF CONTRACT, BREACH OF DUTY (STATUTORY OR OTHERWISE), BREACH OF ANY SAFETY REQUIREMENT OR REGULATION, OR THE NEGLIGENCE, GROSS NEGLIGENCE, WILLFUL MISCONDUCT, OR OTHER LEGAL FAULT OR

RESPONSIBILITY OF ANY PERSON, PARTY, OR ENTITY (INCLUDING THE INDEMNIFIED OR RELEASED PARTY), WHETHER SUCH FORM OF NEGLIGENCE BE SOLE, JOINT OR CONCURRENT, ACTIVE OR PASSIVE.

5. REDRESS UNDER THE INDEMNITY PROVISIONS SET FORTH IN THIS ARTICLE 5 SHALL BE THE EXCLUSIVE REMEDIES AVAILABLE TO THE PARTIES HERETO FOR THE CLAIMS COVERED BY SUCH PROVISIONS.

6. DIRECTIONAL DRILLING
Customer shall furnish BHI with a well location plan (certified by Customer as correct) setting out the surface location of the well, the lease, license, or property boundary lines, and the bottom hole location of Customer's directionally drilled well. If, in the course of drilling the well, it becomes evident to BHI that the certified plan is in error, BHI shall notify Customer of the error, and Customer shall be responsible to regulate all directional drilling factors so that Customer's well bottom hole location will be situated on Customer's property, license, or leasehold at total depth of the well being drilled. CUSTOMER SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ANY CLAIMS ARISING OUT OF, OR RELATED TO, SUBSURFACE TRESPASS ARISING OUT OF DIRECTIONAL DRILLING OPERATIONS OR OTHER OPERATIONS PERFORMED BY BHI INDEMNITEES OR CUSTOMER INDEMNITEES.

7. CUSTOMER WARRANTY/BINDING AUTHORITY
If Customer is not the sole owner of the mineral interests, the well or the field, Customer's request for Services, Equipment or Products shall constitute Customer's warranty that Customer is the duly constituted agent of each and every owner and has full authority to represent the interests of the same with respect to all decisions taken throughout the provision of any Services, Equipment or Products hereunder. CUSTOMER SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD BHI INDEMNITEES HARMLESS FROM AND AGAINST ALL CLAIMS RESULTING FROM THE ALLEGATION BY ANY PERSON OR ENTITY THAT CUSTOMER HAS MISREPRESENTED OR LACKED SUFFICIENT AUTHORITY TO REPRESENT SUCH PERSON OR ENTITY AS WARRANTED BY CUSTOMER IN THIS ARTICLE. Furthermore, Customer warrants that the person ordering work from Contractor and/or signing a request for work is fully authorized to do so and Customer waives any claim that such person did not have authority to bind Customer to the Agreement.

8. ACCESS TO WELL AND WELL SITE STORAGE
With respect to onshore and offshore operations, Customer shall provide at its expense adequate means of transportation required for Tools, Products and BHI personnel to gain access to or return from a well site, and shall obtain at Customer's expense all permits, licenses or other authorization required for BHI to enter upon work areas for the purposes contemplated. When necessary to repair roads or bridges, or to provide transportation to move Tools, Products or BHI personnel, such shall be arranged and paid for by Customer.

Customer shall provide proper storage space at the well site, meeting all applicable safety and security requirements and consistent with good industry practices, for the Tools and Products, including, without limitation, all explosive and radioactive materials.

9. RADIOACTIVE SOURCES
Radioactive sources which may be used in BHI's Services are potentially dangerous. Customer agrees to comply with all applicable governmental regulations governing the use and handling of radioactive sources. In the event a radioactive source becomes stuck in a well, Customer, at Customer's sole risk and expense will make a reasonable attempt to recover such radioactive source in accordance with 10 C.F.R. § 39.15(a)(1)-(4) or other applicable regulations and use special precautions to prevent damaging the source during recovery operations. If the source cannot be recovered, Customer, at Customer's sole risk and expense, will isolate the radioactive material by cementing it in place or by other means consistent with 10 C.F.R. § 39.15 or other applicable statutes or regulations.

10. WARRANTY
A. Services: BHI warrants that the Services shall conform to the material aspects of the specifications agreed to in writing by BHI and Customer. In the event that the Services fail to conform to such specifications, BHI shall re-perform that part of the non-conforming Services, provided BHI is notified thereof in writing by Customer prior to BHI's departure from the work site.

B. Equipment: BHI warrants that the Equipment will be of the types specified by and agreed to in writing by BHI and Customer, and will be in good operating condition. Liability for loss or damage to Equipment is set forth in Article 5.

C. Products: (Excluding drill bits, electric submersible pumps and associated cable and surface equipment, specialty chemical Products and specialty Products): BHI warrants that the Products shall conform to BHI's published specifications or the specifications agreed to in writing by BHI and Customer. If any of the Products fail to conform to such specifications upon inspection by BHI, BHI, at its option, shall repair or replace the non-conforming Products with the type originally furnished or issue credit to the Customer, provided BHI is notified thereof in writing within thirty (30) days after delivery of the particular Products.

D. Drill Bits: BHI warrants that the drill bits to be provided by BHI pursuant to this Agreement shall conform to BHI's published specifications. If any of the drill bits fail to conform to such specifications upon inspection by BHI, BHI, at its option, shall repair or replace the non-conforming drill bits with the type originally furnished or issue credit to the Customer, provided BHI is notified thereof in writing within ninety (90) days from the date of shipment.

E. Electric Submersible Pumps and Associated Cable and Surface Equipment: BHI warrants that the electrical submersible pumps and associated cable and surface equipment to be provided by BHI pursuant to this Agreement shall conform to BHI's published specifications. If any of the electric submersible pumps or associated cable or surface equipment fail to conform with such specifications upon inspection by BHI, BHI, at its option, shall repair or replace the non-conforming electric submersible pumps or associated cable or surface equipment with the type originally furnished, provided BHI is notified thereof in writing within the earlier of twelve (12) months from the date of installation or eighteen (18) months from the date of shipment. Warranty claims by Customer must be submitted to BHI within sixty (60) days of the failure date of the electric submersible pumps or associated cable or surface equipment.

F. Specialty Chemical Products: BHI warrants that the specialty chemical Products to be provided by BHI pursuant to this Agreement shall, upon departure from BHI's point of origin, conform to the published physical and chemical specifications established by BHI for each such Product. If any of the specialty chemical Products fail to conform to such specifications, BHI, at its option, shall replace the non-conforming specialty chemical Products with the type originally furnished or issue credit to the Customer, provided BHI is notified thereof in writing within thirty (30) days after the specialty chemical Products depart BHI's point of origin.

G. Specialty Products: In the event BHI is to provide Products to Customer based upon Customer's specific request that BHI develop, manufacture, test or put to use Products that are intended to satisfy a unique need identified by Customer and are not "standard" Products of BHI, Customer hereby recognizes and agrees that the specialty Products being provided do not necessarily have or contain the same or similar characteristics as BHI's "standard" Products, including, but not limited to, a historical performance against which future performance can be measured. In developing, manufacturing, testing and putting to use any specialty Products, BHI will be relying upon information and specifications provided by Customer relating to the unique needs of Customer. As such, BHI shall have no responsibility for the design, manufacture or engineering of any such specialty Products, even though BHI may have participated in the development and manufacture of the specialty Products, or for any Customer-furnished materials, information and specifications. If, upon inspection by BHI, any of the specialty Products fail to meet the specifications agreed to in writing by Customer and BHI, then BHI shall, at its option, repair or replace the non-conforming specialty Products with (i) the type originally furnished to Customer, or (ii) substituted Products having BHI's "standard" specifications and qualifications.

H. Discharge Services: Except to the extent that BHI has agreed to provide its discharge compliance engineering services ("Discharge Services") to Customer pursuant to this Agreement, BHI shall have no responsibility for achievement of and compliance with any specific oil retention or similar requirements mandated by any applicable local, state or federal law or regulation. If Discharge Services are rendered by BHI and agreed oil retention or similar requirements are not met, then BHI shall, at its option, re-perform the Discharge Services, or provide a credit to Customer to cover any documented additional disposal costs incurred by Customer as a result of the nonconforming Discharge Services, provided that such credit shall be limited to 3% of the amount charged for the nonconforming Discharge Services.

BHI's warranty obligations hereunder are non-transferrable and shall not apply if the non-conformity was caused by (i) Customer's failure to properly store or maintain the Products or Equipment, (ii) abnormal well conditions, abrasive materials, corrosion due to aggressive fluids or incorrect specifications provided by Customer, (iii) unauthorized alteration or repair of the Products or Equipment, (iv) the Products or Equipment are lost or damaged while on Customer's site due to Customer's or any third party's negligence, vandalism or force majeure (including, but not limited to, lightning), or (v) use or handling of the Products or Equipment by Customer in a manner inconsistent with BHI's recommendations. Further, BHI's warranty obligations shall terminate if Customer fails to perform its obligations under this or any other Agreement between the parties.

All non-conforming Products shall be delivered to the service facility designated by BHI. All transportation charges and removal and reinstallation charges related to the repair or replacement of non-conforming Products shall be borne by Customer. Any parts for which BHI provides replacement under this warranty shall become the property of BHI. With regard to materials or equipment furnished by third party vendors and/or suppliers, BHI's liability therefor shall be limited to the assignment of such third party vendor's or supplier's warranty to Customer, to the extent such warranties are assignable. The warranty period for any repaired or replaced Products shall be only for the remainder of the original warranty period.

Interpretations, research, analysis, recommendations, advice or interpretational data (specifically including, without limitation, any preliminary cuttings reinjection program and any engineering designs, geological studies or analyses, well programs, reservoir models, or drilling production optimization or management programs) ("Interpretations and/or Recommendations") furnished by BHI hereunder are opinions based upon inferences from measurements, empirical relationships and assumptions, and industry practice, which inferences, assumptions and practices are not infallible, and with respect to which professional geologists, engineers, drilling consultants, and analysts may differ. Accordingly, BHI does not warrant the accuracy, correctness, or completeness of any such Interpretations and/or Recommendations, or that Customer's reliance or any third party's reliance on such Interpretations and/or Recommendations will accomplish any particular results. CUSTOMER ASSUMES FULL RESPONSIBILITY FOR THE USE OF SUCH INTERPRETATIONS AND/OR RECOMMENDATIONS AND FOR ALL DECISIONS BASED THEREON (INCLUDING, WITHOUT LIMITATION, DECISIONS BASED ON ANY OIL AND GAS EVALUATIONS, PRODUCTION FORECASTS AND RESERVE ESTIMATES, FURNISHED BY BHI TO CUSTOMER HEREUNDER), AND CUSTOMER HEREBY AGREES TO RELEASE, DEFEND, INDEMNIFY AND HOLD BHI INDEMNITEES HARMLESS FROM ANY CLAIMS ARISING OUT OF THE USE OF SUCH INTERPRETATIONS AND/OR RECOMMENDATIONS.

BHI will endeavor to transmit data to Customer as accurately and securely as practicable in accordance with current industry practice. Notwithstanding the foregoing, BHI does not warrant the accuracy of data transmitted by electronic processes and will not be responsible to Customer for accidental or intentional interception of such data by others.

BHI does not represent or warrant that the Products are or will be compliant with the requirements of REACH (the Registration Evaluation Authorisation and Restriction of Chemicals Regulation 1907/2006, as amended) and all implied warranties as to compliance with REACH ("REACH Compliance") are hereby excluded to the fullest extent permitted by law. Without prejudice to the foregoing, BHI shall use reasonable endeavors to obtain or maintain REACH Compliance in respect of the Products where required by law, unless it is Customer's responsibility to obtain or maintain REACH Compliance or any non-compliance is caused by any act or omission of Customer. In the event BHI receives written notice from any competent authority, or in its reasonable opinion decides, that any of the Products are not or will not become REACH Compliant, it shall inform Customer in writing within a reasonable time and may suspend any further deliveries of the relevant Products and/or terminate the Order. Customer shall promptly provide such information to BHI as may be required in order to obtain and maintain REACH Compliance in respect of the Products and shall comply with its obligations under REACH.

THIS ARTICLE 10 SETS FORTH CUSTOMER'S SOLE REMEDIES AND BHI'S ONLY OBLIGATION WITH REGARD TO DEFECTIVE OR NON-CONFORMING SERVICES, EQUIPMENT OR PRODUCTS. EXCEPT AS IS OTHERWISE EXPRESSLY PROVIDED PURSUANT TO THE PROVISIONS OF THIS ARTICLE 10, BHI MAKES NO WARRANTY OR GUARANTEE OF ANY KIND, EXPRESS OR IMPLIED, INCLUDING NO IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, REGARDING ANY SERVICES PERFORMED OR EQUIPMENT OR PRODUCTS SUPPLIED BY BHI HEREUNDER. IN NO EVENT SHALL BHI BE LIABLE FOR RIG TIME INCURRED BY CUSTOMER INDEMNITEES AS A RESULT OF DEFECTIVE OR NON-CONFORMING SERVICES, EQUIPMENT OR PRODUCTS.

11. LOST EQUIPMENT INDEMNITY BUY-BACK
In some locations, lost equipment indemnity buy-back ("LEIB") is available for some Tools. LEIB must be purchased by Customer prior to the Tools leaving BHI's point of origin. Regardless of LEIB, Customer shall make every reasonable effort to recover BHI's Tools lost or damaged in a well or hole in accordance with Paragraph 5D. BHI reserves the right not to offer LEIB at its sole discretion.

12. INSURANCE
Upon written request, each party shall furnish to the other party certificates of insurance evidencing that adequate insurance to support each party's obligations hereunder has been secured. To the extent of each party's release and indemnity obligations hereunder, each party agrees that all such insurance policies shall (i) be primary to the other party's insurance, (ii) include the other party, its parent, subsidiary and affiliated or related companies, its subcontractors and other contractors, and its and their respective officers, directors, employees, consultants and agents as additional insured, and (iii) be endorsed to waive

subrogation against the other party, its parent, subsidiary and affiliated or related companies, its subcontractors and other contractors, and its and their respective officers, directors, employees, consultants and agents.

13. CHANGE OF DESIGN
BHI expressly reserves the right to change or modify the design and construction of any of its Products without obligation to furnish or install such changes or modifications on Products previously or subsequently sold.

14. PATENTS
BHI warrants that the use or sale of Equipment or Products hereunder will not infringe valid patents of others by reason of the use or sale of such Equipment or Products per se, and hereby agrees to hold CUSTOMER harmless against judgment for damages for infringement of any such patent, provided that Customer shall promptly notify BHI in writing upon receipt of any claim for infringement, or upon the filing of any such suit for infringement, whichever first occurs, and shall afford BHI full opportunity, at BHI's option and expense, to answer such claim or threat of suit, assume the control of the defense of such suit, and settle or compromise same in any way BHI sees fit. BHI does not warrant that such Equipment or Products: (i) will not infringe any such patent when not of BHI's manufacture, or specially made, in whole or in part, to the Customer's design specifications; or (ii) if used or sold in combination with other materials or apparatus or used in the practice of processes, will not, as a result of such combination or use, infringe any such patent, and BHI shall not be liable and does not hold Customer harmless for damages or losses of any nature whatsoever resulting from actual or alleged patent infringement arising pursuant to (i) and (ii) above. THIS PARAGRAPH STATES THE ENTIRE RESPONSIBILITY OF BHI CONCERNING PATENT INFRINGEMENT

15. CONFIDENTIALITY
Each party shall maintain all data and information obtained from the other party in strict confidence, subject only to disclosure required by law or legal process. In the event that BHI owns copyrights to, patents to, or has filed patent applications on, any technology related to the Services, Products or Equipment furnished by BHI hereunder, and if BHI makes any improvements on such technology, then such improvements shall not fall within the confidentiality obligations of BHI included herein, and BHI shall own all such improvements, including drawings, specifications, calculations and other documents.

The design, construction, application and operation of BHI's Services, Equipment and Products embody proprietary and confidential information. Customer shall maintain this information in strict confidence and shall not disclose it to others, subject only to disclosure required by law or legal process. To the extent permissible by law, Customer shall not resell the Products or Equipment (or drawings related thereto) to others or reverse engineer or permit others to reverse engineer, for the purpose of manufacturing, similar Products or Equipment.

16. LIENS, ATTACHMENTS AND ENCUMBRANCES
Customer grants to BHI a lien upon and a security interest in: (i) any interest that Customer now owns or hereafter acquires in the lands, leasehold interests, pipelines, pipeline right-of-ways, personal property and fixtures arising out of, pertaining to, located on, or used in connection with the development of, the mineral property on which the Services, Products, or Equipment were performed or installed (the "Mineral Property"), (ii) the oil and gas when extracted from the Mineral Property, including the proceeds thereof, and any producer's lien rights attaching thereto, (iii) the contract rights, inventory and general intangibles pertaining to the Mineral Property, and (iv) any claim against any working interest owner of the Mineral Property arising from nonpayment of joint interest billings, lease operating expenses, or otherwise. This lien and security interest shall be for the purpose of securing performance of Customer's obligations to BHI under this Agreement. All of BHI's lien rights, whether arising hereunder or under applicable law, are enforceable at BHI's discretion, in arbitration or in any court of competent jurisdiction, notwithstanding Article 20. Customer authorizes BHI to have filed a financing statement and any other instruments BHI determines to be necessary or appropriate to perfect the lien and security interest created hereby. Upon request, Customer shall execute any document determined by BHI to be necessary or appropriate to perfect the lien and security interest under all applicable laws and the real property recording statutes of the state in which the Mineral Property is located. If BHI is unable to obtain proper execution of such documentation within a reasonable period of time after the request is made, then Customer hereby appoints BHI as Customer's true and lawful agent and attorney-in-fact, to execute all documents on its behalf, and to otherwise take such actions on its behalf, as BHI deems necessary or appropriate, to perfect the lien and security interest created or contemplated hereby. This appointment is coupled with an interest and may not be revoked for as long as any portion of Customer's obligations hereunder remain outstanding. The lien and security interest created hereby are in addition to, and act in lieu of, any other liens and security interests now existing or hereafter coming into existence, and securing the performance of Customer's obligations hereunder, whether voluntary or involuntary, including any liens arising by statute or common law in favor of mechanics and/or materialmen.

Should Customer: (i) commit a breach of any of the terms and conditions of this Agreement, (ii) be named as a debtor in a bankruptcy proceeding, (iii) become insolvent, (iv) become, or any of its assets become, the subject of a receivership proceeding, or should any creditor or other person or entity attach or levy Customer's property or equipment, BHI shall immediately have the right, without notice and without liability for trespass or damages, to retake and remove any of its Products or Equipment wherever they may be found. CUSTOMER SHALL RELEASE, DEFEND, INDEMNIFY AND HOLD BHI INDEMNITEES HARMLESS FROM ANY AND ALL LIENS AND ENCUMBRANCES AGAINST PRODUCTS OR EQUIPMENT FURNISHED HEREUNDER AND SHALL RETURN SAME PROMPTLY TO BHI FREE OF ANY LIENS OR ENCUMBRANCES.

17. FORCE MAJEURE
If either party is unable by reason of Force Majeure to carry out any of its obligations under this Agreement, other than obligations to pay money, then on such party giving notice and particulars in writing to the other party within a reasonable time after the occurrence of the cause relied upon, such obligations shall be suspended. "Force Majeure" shall include any event that is beyond the reasonable control of the party so affected including, without limitation, acts of God, laws and regulations, government action, war, civil disturbances, hijack, piracy, criminal action by a third party, threats or acts of terrorism, strikes and labor problems, delays of vendors or carriers, lightening, fire, flood, washout, storm, breakage or accident to equipment or machinery, and shortage of raw materials. In the event that any suspension due to Force Majeure exceeds ten (10) consecutive days, either party may terminate this Agreement by written notice to the other party and Customer shall be liable for demobilization and any other reasonable costs incurred by BHI incidental to such termination.

18. INDEPENDENT CONTRACTOR
It is expressly understood that BHI is an independent contractor, and that neither BHI nor its principals, partners, employees or subcontractors are servants, agents or employees of Customer.

In all cases where BHI's employees (defined to include BHI's and its subcontractors' direct, borrowed, special, or statutory employees) are covered by the Louisiana Workers' Compensation Act, La. R.S. 23:102 et seq., BHI and Customer agree that all Services, Products and Equipment provided by BHI and BHI's employees pursuant to this Agreement are an integral part of and are essential to the ability of

Rev. January 2015

Customer to generate Customer's goods, products, and services for the purpose of La. R.S. 23:106 (A)(1). Furthermore, BHI and Customer agree that Customer is the statutory employer of BHI's employees for purposes of La. R.S. 23:1061 (A) (3).

19. LAWS, RULES, REGULATIONS, AND EXPORT CONTROL
BHI and Customer agree to be subject to all laws, rules, regulations and decrees of any governmental or regulatory body having jurisdiction over the Services, Equipment or Products to be provided by BHI or the work site or that may otherwise be applicable to BHI's or Customer's performance under this Agreement.

Customer acknowledges that Equipment, Services, Products and/or related technical data covered by this Agreement may be subject to U.S. and/or foreign trade controls. Customer agrees that it will not sell, re-export or transfer Equipment, Products and/or related technical data except in full compliance with all governmental requirements including but not limited to economic sanctions and export controls administered by the U.S. Department of Treasury, U.S. Department of Commerce and U.S. Department of State. Customer agrees to comply with all BHI requests for trade compliance information, statements, and other assurances including, without limitation, requests for End-User and Routed Transaction certifications. Any breach of this provision shall be deemed a material breach of this Agreement and sufficient basis for BHI to reject any or all orders or to terminate the Agreement.

BHI reserves the right to refuse to fulfill any order or otherwise perform under this Agreement if BHI in its sole discretion determines that such action may violate any law or regulation. Customer agrees that such refusal, cancellation, or termination of the Agreement by BHI will not constitute a breach of BHI's obligations under this Agreement and Customer hereby waives any and all claims against BHI related to such refusal, cancellation, or termination.

20. GOVERNING LAW AND ARBITRATION
A. Except for Services, Equipment or Products provided, or to be provided, by BHI in North or South America (the "Americas"): THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH ENGLISH LAW, EXCLUDING CONFLICTS OF LAW AND CHOICE OF LAW PRINCIPLES. ANY DISPUTE, CONTROVERSY OR CLAIM ("DISPUTE") ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE FURNISHING OF EQUIPMENT, SERVICES OR PRODUCTS HEREUNDER SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION CONDUCTED IN ACCORDANCE WITH THE UNCITRAL ARBITRATION RULES (THE "RULES"). The Tribunal shall be composed of three arbitrators, with each party appointing one arbitrator, and the two arbitrators so appointed appointing the third arbitrator who shall act as the presiding arbitrator of the Tribunal (the "Tribunal"). The appointing authority under the Rules shall be the London Court of International Arbitration. The language of the arbitration shall be English. The seat of arbitration shall be London, England, and the proceedings shall be conducted and concluded as soon as reasonably practicable, based upon the schedule established by the Tribunal. Any monetary award shall be made in U.S. Dollars, free of any tax or other deduction, and shall include interest from the date of any breach or other violation of the Agreement to the date paid in full at a floating rate of interest equal to the prime rate of interest in effect at Citibank, N.A., New York, U.S.A., from time to time.

B. For Services, Equipment or Products provided, or to be provided, by BHI in the Americas: THIS AGREEMENT SHALL BE GOVERNED BY AND INTERPRETED IN ACCORDANCE WITH THE SUBSTANTIVE LAWS OF OKLAHOMA, EXCLUDING CONFLICTS OF LAW AND CHOICE OF LAW PRINCIPLES. ANY DISPUTE, CONTROVERSY OR CLAIM ("DISPUTE") ARISING OUT OF OR IN CONNECTION WITH THIS AGREEMENT OR THE FURNISHING OF EQUIPMENT, SERVICES OR PRODUCTS HEREUNDER SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION CONDUCTED IN ACCORDANCE WITH THE COMMERCIAL RULES OF ARBITRATION OF THE AMERICAN ARBITRATION ASSOCIATION (THE "RULES"). The tribunal shall be composed of one (1) neutral arbitrator if the Dispute involves a maximum exposure of less than $1,000,000. If the parties are unable to agree on a neutral arbitrator, one will be appointed pursuant to the Rules. If the Dispute involves a maximum exposure equal to or in excess of $1,000,000, then the Tribunal shall consist of three (3) arbitrators, with each party appointing one arbitrator, and the two arbitrators so appointed appointing the third arbitrator who shall act as Chair (the "Tribunal"). The seat of arbitration shall be Houston, Texas, and the proceedings shall be conducted and concluded as soon as reasonably practicable, based upon the schedule established by the Tribunal.

C. For any arbitration conducted in accordance with Paragraph A. or B. above, the following shall apply: No award shall be made for Consequential Damages. Judgment upon the award rendered by the Tribunal pursuant hereto may be entered in, and enforced by, any court of competent jurisdiction. All statutes of limitation that would otherwise be applicable shall apply to the arbitration proceeding. Any attorney-client privilege and other protection against disclosure of privileged or confidential information, including, without limitation, any protection afforded the work-product of any attorney, that could otherwise be claimed by any party shall be available to, and may be claimed by, any such party in any arbitration proceeding. The parties shall treat all matters relating to the arbitration as confidential. Subject to each party's right to cooperate fully with the United States authorities, the parties understand and agree that this confidentiality obligation extends to information concerning the fact of any request for arbitration, any ongoing arbitration, as well as all matters discussed, discovered, or divulged, (whether voluntarily or by compulsion) during the course of such arbitration proceeding. It is the desire of the parties that any Dispute is resolved efficiently and fairly and the Tribunal shall act in a manner consistent with these intentions

21. ASSIGNMENT
BHI shall have the right to assign this Agreement to any of its subsidiaries, affiliated or related companies without the consent of Customer.

22. GENERAL
Failure of Customer or BHI to enforce any of the terms and conditions of this Agreement shall not prevent a subsequent enforcement of such terms and conditions or be deemed a waiver of any subsequent breach. Should any provision of this Agreement, or a portion thereof, be unenforceable or in conflict with governing country, state, province, or local laws, then the validity of the remaining provisions, and portions thereof, shall not be affected by such unenforceability or conflict, and this Agreement shall be construed as if such provisions, or portion thereof, were not contained herein. This Agreement contains all representations of the parties and supersedes all prior oral or written agreements or representations. Customer acknowledges that it has not relied on any representations other than those contained in this Agreement. This Agreement shall not be varied, supplemented, qualified, or interpreted by any prior course of dealing between the parties or by any usage of trade and may only be amended by an agreement executed by both parties. In the event that any conflict exists between the provisions of this Agreement and any other terms and conditions set forth in Customer's purchase orders, field work orders, work tickets, invoices, statements, or any other type of memoranda or other documents used by Customer in the normal course of business, whether oral or written, the provisions of this Agreement shall govern.